Opinion issued April 26,
2012.



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-10-00727-CR

———————————

George Robinson, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 338th District Court 

Harris County, Texas



Trial Court Case No. 1199360

 



MEMORANDUM
OPINION

Appellant George Robinson was charged
by indictment with possession with intent to deliver a controlled substance weighing
more than four grams but less than two hundred grams.  See Tex. Health & Safety Code Ann. § 481.112 (West 2010).  Following the trial court’s partial
denial of Robinson’s pretrial motion to suppress evidence, Robinson pleaded guilty
to a lesser charge of possession with intent to deliver a controlled substance with
an aggregate weight of more than one gram but less than four grams.  Id. 
The trial court sentenced Robinson to five years in prison.  In his sole issue,
Robinson argues that the trial court erred in overruling his pretrial motion to
suppress the cocaine and drug paraphernalia the police found in the car in
which Robinson was a passenger.  We affirm.

Background

Robinson filed a pre-trial motion to
suppress the money, cocaine, and drug paraphernalia recovered by the police
during a traffic stop of the car in which he was a passenger.[1]
 Robinson argued that because the police officers did not have probable cause
to stop the car, or to subsequently search it and detain and search its
occupants, the money, cocaine, and drug paraphernalia recovered as a result of
the traffic stop were inadmissible.

During the hearing on the motion to
suppress, Lieutenant J. Crowson of the Houston Police Department testified that
on January 15, 2009 he was on patrol in an unmarked police vehicle in the Sunny
Food Store parking lot near the 4100 block of West Bellfort.  Crowson was
surveilling the parking lot in response to reports of narcotics and
prostitution activity.  Crowson observed Robinson, Warren Robinson, Kerwin
Simpson and two women move back and forth between two cars in the parking lot. 
Crowson testified that he became suspicious of their activity because the two
cars were parked away from the door of the Food Mart, the occupants moved between
the cars with frequency and only one member of the group, a woman, actually
entered the Food Mart.  Crowson radioed Officers Tabor and Rippey, who were
nearby in a marked police unit.  Crowson asked Tabor and Rippey to be ready to
assist him if necessary.  After about twenty minutes, Robinson, Warren, and
Simpson left the parking lot in a Dodge Magnum and the women left in a separate
car.  As he drove out of the parking lot, Simpson failed to make a turn that
was as close as practicable to the right-hand curb.  As Crowson followed the
Magnum he also saw Simpson make a left turn from a lane other than the extreme
left-hand lane that was available.  Crowson testified that both the right turn
out of the parking lot and Simpson’s left turn from a lane other than the
extreme left-hand lane were traffic violations.  Crowson radioed to Officers Tabor
and Rippey and asked them to stop the Magnum.  Crowson, who was in
plainclothes, remained in his vehicle during the initial stop and waited until
the officers began to detain Robinson, Warren, and Simpson before assisting at
the scene.  Crowson decided to assist with the detention once he observed that Robinson
appeared to be wandering away from the car.  Crowson testified that as he
approached the Magnum he could smell the odor of marijuana.  Crowson did not
participate in the search of the vehicle or the men.

Officer Tabor testified that he did not
personally observe the traffic violations Crowson observed but began to follow
the Magnum at Crowson’s request.  While driving behind the Magnum, Tabor
noticed that the Magnum’s paper license plate was missing a date of sale and
that it lacked a required Texas emblem.  Following Crowson’s instructions,
Tabor and Rippey activated their emergency lights and pulled the car over.  The
officers saw Simpson sitting in the driver’s seat, Robinson sitting in the
front passenger seat, and Warren in the back seat.  Tabor testified that both
he and Rippey approached the vehicle and asked that all of the windows be
rolled down.  According to Tabor, after all of the windows had been rolled down
he could smell the odor of bulk, unburned marijuana.  Tabor and Rippey asked the
three occupants to step out of the car and all three men were put in
handcuffs.  Tabor testified that the officers patted down Robinson, Warren, and
Simpson and found a large amount of money in each of their pockets, but did not
find any weapons or hard objects on the men.  The officers placed the money on
the front seat of the police vehicle.  Tabor also stated that for safety
reasons, while the officers searched the car, they detained the men by putting
two in the back of the police car and having Robinson stand handcuffed on the
side of the road.  

Tabor testified that while searching under
the driver’s side front seat of the car he located a plastic bag that contained
smaller bags.  Tabor observed a white powdery substance inside the smaller
bags.  Tabor also found, under the back side of the same seat, a glass beaker
containing a liquid and white powdery substance and a whisk.  The white powdery
substance tested positive for cocaine in a field test.  Tabor testified that the
officers did not recover any marijuana inside of the car or on Robinson, Warren,
or Simpson.  According to Tabor, because the odor of marijuana had been so
strong but the officers could not locate the source during their search, they
radioed for the assistance of a canine unit to help them find a hidden
compartment or hiding place.  Although the dog searched the car, Tabor
testified that it did not alert to the presence of marijuana.  The officers
arrested all three men for possession of a controlled substance.  According to Tabor,
only two minutes passed between the start of the detention and the discovery of
the cocaine. 

The trial court overruled in part and
granted in part Robinson’s motion to suppress.  It also made findings of fact
and conclusions of law.  Consistent with the officers’ testimony, the trial court
found that Simpson violated a traffic law by making a left turn from a lane
other than the extreme left lane.  The court thus found that the stop was
reasonable.  The court found that the officers smelled marijuana when they made
contact with the occupants of the car.  It also found that all three men were
involved in suspicious activity outside the Sunny Food Store, that the activity
occurred just a few minutes before the officers smelled the marijuana coming
from the car, and that the Sunny Food Store was known for being a place where
illegal narcotic activity occurs.  Accordingly, the trial court concluded that
the officers had probable cause to search the vehicle.  The seizure of the
money from the men’s pockets, however, was found by the trial court to be
unjustified.  The trial court granted the motion to suppress the seized money
but denied the motion to suppress the cocaine and drug paraphernalia discovered
in the search.  Robinson entered a plea of guilty for the charge of possession with intent to deliver a
controlled substance with an aggregate weight of one gram but less than four
grams.  He was sentenced to five years in prison.  This appeal followed.

Standard of Review

“In review of a trial court’s ruling
on a motion to suppress, an appellate court must apply a standard of abuse of
discretion and overturn the trial court’s ruling only if it is outside the zone
of reasonable
disagreement.”  Martinez v. State, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011).  We use a bifurcated standard of
review, giving almost total deference to a trial court’s determination of historic facts and
mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo
standard of review to pure questions of law and mixed questions that do not
depend on credibility determinations.  Id. at 922–23. 

In a hearing on a motion to suppress,
the trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000).  “When the trial court does file
findings of fact with its ruling on a motion to suppress, an appellate court
does not engage in its own factual review, but determines only whether the
record supports the trial court’s fact findings.”  Flores v. State, 177 S.W.3d 8, 13–14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  Under this deferential standard of
review, an appellate court should only disturb a trial court’s findings of fact
if they are clearly erroneous.  See Manzi v. State, 88 S.W.3d 240, 254
(Tex. Crim. App. 2002) (quoting Anderson v. City of Bessemer City, N.C.,
470 U.S. 564, 105 S. Ct. 1504 (1985)).  “To determine whether a fact finder’s decision
is ‘clearly erroneous,’ appellate courts examine the record to see whether the ruling
leaves them with the ‘definite and firm conviction that a mistake has been
committed.’”  Guzman v. State, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002)
(citing and quoting U.S. v. Fernandez, 887 F.2d 564, 567 (5th Cir. 1989)). 


Analysis

In his sole issue Robinson argues that the trial court
erred by finding that the officers had probable cause to search the vehicle
based on their detection of the smell of marijuana.  Specifically, Robinson
argues that because marijuana was not actually found in the Magnum or on its
occupants, the odor of bulk marijuana must have come from surrounding areas. 
According to Robinson, the smell of marijuana in the area surrounding a vehicle,
without more, cannot establish probable cause to search that vehicle.  

Probable cause to believe a vehicle contains evidence
of a crime is sufficient to justify a search of a vehicle.  Powell v. State,
898 S.W.2d 821, 827 (Tex. Crim. App. 1994).  Probable cause exists when the
facts and circumstances within the knowledge of the officer would lead a person
of reasonable caution and prudence to believe that an instrumentality of a
crime or evidence will be found.  McNairy v. State, 835, S.W.2d. 101,
106 (Tex. Crim. App. 1991); Autry v. State, 21 S.W.3d 590, 592 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing Moulden v. State, 576
S.W.2d 817, 819 (Tex. Crim. App. 1978)).  “When determining probable cause, the
focus is on the facts and circumstances known to law enforcement officials at
the time of the search.”  Wiede v. State, 214 S.W.3d 17, 26 (Tex. Crim.
App. 2007).

Although Robinson argues that allowing a police
officer to search a car based on an officer’s detection of the odor of
contraband such as marijuana is problematic for Fourth Amendment purposes, he acknowledges
that the Court of Criminal Appeals concluded in Moulden that the smell
of burnt marijuana, without more, was sufficient to justify an officer’s search
of a vehicle.  Moulden, 576 S.W.2d at 819.  The Court of Criminal
Appeals and Texas courts of appeals have consistently concluded that the smell
of marijuana emanating from a vehicle provides probable cause for a search.  See
Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979) (odor
of marijuana provided probable cause to search appellant’s vehicle); Marsh
v. State, 684 S.W.2d 676, 679 (Tex. Crim. App. 1984) (officer who smelled
marijuana as occupants stepped out of vehicle had probable cause to search
vehicle); see also Dickey v. State, 96 S.W.3d 610, 613 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (officer who testified that he smelled odor
of raw marijuana when he opened the appellant’s car door had probable cause to
search the vehicle).  

Robinson’s attempt to distinguish this case from Moulden
is unavailing.  Robinson points out that unlike in Moulden, the officers
in this case did not find any marijuana in the vehicle.  But the discovery of
marijuana is not necessary for a trial court to find that an officer had
probable cause to search a vehicle based on the odor of marijuana.  In Williams
v. State, the Fourteenth Court of Appeals held that the trial court did not
err in finding an officer had probable cause to search a vehicle when the
officer testified that although he detected the odor of marijuana emitting from
appellant’s car, he recovered only PCP from the vehicle.  Williams v. State,
No. 14-01-01250-CR, 2002 WL 31426293, at *2 (Tex. App.—Houston [14th Dist.]
Oct. 10, 2002, no pet.).  

The evidence adduced at the hearing on the motion to
suppress fairly supports the trial court’s finding that the odor of marijuana
was emanating from the vehicle itself and not the surrounding area.[2]  This
finding was based on Tabor’s testimony that he did not detect the odor
marijuana when he initially stepped out of his car.  According to Tabor, he did
not detect bulk marijuana until all of windows of the Magnum were down and he
and Officer Rippey approached the Magnum.  The trial court’s finding that the
odor of marijuana was emanating from the Magnum is also supported by Crowson’s
testimony that he did not smell the odor of marijuana until he was standing
less than two or three feet away from the Magnum.  Both Crowson and Tabor
testified that based on their experience it is possible for the odor of
marijuana to emanate from a vehicle, even if marijuana is not present.  We conclude
that the trial court’s finding that the officers smelled marijuana emanating
from the vehicle was not clearly erroneous.  Manzi, 88 S.W.3d at 254 (quoting Anderson, 470 U.S. 564,
105 S. Ct. 1504).  The fact that marijuana was not detected by the dog when it
arrived sometime after the initial search does not alter our conclusion,
because whether probable
cause exists is determined from the facts and circumstances known to the
officers at the time of their search, not after it.  See Wiede, 214
S.W.3d at 26.  We conclude that the trial court did not err in denying
Robinson’s motion to suppress the drugs and drug paraphernalia.  See Marsh,
684 S.W.2d 679 (officer who smelled marijuana coming from appellant’s truck
during traffic stop had probable cause to search vehicle); Dickey, 96
S.W.3d at 613 (officer who testified he smelled odor of raw marijuana when he
opened appellant’s car door had probable cause to search vehicle); Taylor v.
State, 20 S.W.3d 51, 55 (Tex. App.—Texarkana 2000, pet. ref’d) (officer had
probable cause to search vehicle based on odor of marijuana coming from
vehicle); Williams, 2002 WL 31426293, at *3 (trial court did not err in
denying motion to suppress PCP found in appellant’s car when officer searched
car based on odor of marijuana even though no marijuana was found in vehicle).

Conclusion

          We affirm the judgment of the trial
court.  

 

                                                                   Rebeca
Huddle

                                                                   Justice


 

Panel consists of
Justices Jennings, Massengale, and Huddle.

Do not publish.   Tex. R. App. P. 47.2(b).









[1]           The
two other occupants of the vehicle, Warren Robinson and Kerwin Simpson, also
moved to suppress this evidence.  The trial court heard the motions
simultaneously.  Warren Robinson’s appeal, No. 01-10-00728-CR, and Kerwin
Simpson’s appeal, No. 01-10-00726-CR, are also before this court.  





[2]
          Specifically, the trial court found that “Officer Tabor could smell
the strong odor of marijuana emanating from the vehicle.”