# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00647-CR

**Mario De Los Santos, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
### NO. D-10-0567-SB, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Mario De Los Santos of the offense of possession of a controlled substance, methamphetamine, in an amount of four grams or more but less than two hundred grams.[1]  The district court rendered judgment on the verdict and assessed punishment, enhanced by a prior conviction for the offense of possession of methamphetamine with intent to deliver, at thirty years' imprisonment.  In a single issue on appeal, De Los Santos asserts that the district court abused its discretion in denying his motion to suppress evidence.  We will affirm the district court's judgment.

## BACKGROUND

At the hearing on the motion to suppress, the district court heard evidence that on April 16, 2010, Department of Public Safety Trooper Joel Callaway stopped a vehicle for speeding.

---

[1] *See* Tex. Health & Safety Code § 481.115(d).

Callaway testified that the driver and sole occupant of the vehicle was identified as De Los Santos. Upon making contact with De Los Santos, Callaway recounted, he "detected the odor of marihuana in the vehicle." Callaway added that the marihuana had a "burned" smell to it. Callaway also noticed that De Los Santos was "acting nervous" and "breathing heavily" and that his hands and voice were "shaking." Callaway asked De Los Santos to exit the vehicle and De Los Santos complied. Callaway recounted that upon searching De Los Santos for weapons, he found $4,900 in cash on his person, in the form of one-hundred-dollar bills. Callaway further testified that he then proceeded to search the vehicle and that, upon searching it, he found "a pink strawberrish crystal substance and a clear baggy in the center console," along with a wallet containing an additional $352.00 in cash and "a glass pipe with methamphetamine residue that was located between the center console and the driver's seat." On cross-examination, Callaway acknowledged that he found no marihuana or marihuana paraphernalia inside the vehicle, nor did he see De Los Santos throw anything out of the vehicle at any time.

Other witnesses at the suppression hearing included Department of Public Safety Officer Chris Dale, who searched the vehicle after it was impounded and testified that he found no marihuana inside the vehicle; and De Los Santos, who claimed that there was no odor of marihuana in the vehicle at the time of the traffic stop, denied that he had smoked marihuana prior to the stop, and claimed that "to [his] knowledge, nobody has ever smoked marihuana in [his] vehicle."[2]

---

[2] An additional witness, Lisa Golden, was called by the defense to testify that a hair-follicle sample taken from De Los Santos several days after the traffic stop tested negative for marihuana. However, after Golden had testified to that fact, the district court excluded the documentary evidence on which Golden's testimony was based, as the district court concluded that it had not been properly authenticated.

2

Additionally, a video recording of the traffic stop was admitted into evidence. On the recording, prior to the search of the vehicle, Callaway can be heard asking De Los Santos whether he had smoked "weed," to which De Los Santos responded that he had not. Shortly thereafter, as Callaway proceeded to search De Los Santos for weapons, De Los Santos can be heard asking Callaway, "Do you think I'm smoking weed?" Callaway can be heard replying, "I don't know."

At the conclusion of the suppression hearing, De Los Santos claimed that Callaway was lying regarding the smell of marihuana inside the vehicle and that, consequently, Callaway had no probable cause to search the vehicle without a warrant. The district court denied the motion to suppress and the case proceeded to trial. At the conclusion of trial, the jury found De Los Santos guilty of possession of methamphetamine as charged and the district court rendered judgment on the verdict and assessed punishment as noted above. This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress for abuse of discretion.[3] We are to view the record "in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'"[4] "We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case."[5] "The appellate court must apply

---

[3] *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

[4] *Id*. (quoting *Dixon*, 206 S.W.3d at 590); *see Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1991) (op. on reh'g).

[5] *Dixon*, 206 S.W.3d at 590 (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations."[6]

## ANALYSIS

In his sole issue on appeal, De Los Santos asserts that the district court abused its discretion in denying his motion to suppress. However, rather than attack the legal basis of the district court's decision, specifically its conclusion that the odor of marihuana provided Callaway with probable cause to search the vehicle, De Los Santos claims that the district court did not act in a "neutral and detached" manner in evaluating the credibility of Trooper Calloway's testimony that he had smelled marihuana inside the vehicle. As support for this contention, De Los Santos points to the following exchange during the parties' closing arguments at the suppression hearing:

| [Prosecutor]: | Your Honor, the defense has conceded that the search without a warrant based upon the smell of marihuana is legal and proper. As I understand, his argument today is they just don't believe the trooper. |
|---|---|
| [The Court]: | That's right, and it's whether or not the Court believes Mr. Callaway is lying. |
| [Prosecutor]: | And based on the credibility of the highway patrol and his actions, which the Court was allowed to review by both his testimony and demeanor in court, and by the Court's observations on the videotape. It is very obvious to note that Trooper Callaway and the Defendant had some discussion |

---

[6] *Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)).

4

regarding marihuana almost as soon as he got out of the vehicle, and Trooper Callaway never wavered in his testimony that within 40 seconds of having made contact with Mr. De Los Santos, he had decided he was going to search the vehicle.

. . . .

Now, the defense, and the Defendant, through his testimony, says "I wasn't smoking marihuana." He says that on the tape at some point. Who was smoking the marihuana is not all that important. It's just that the officer detected the odor of the marihuana coming from the vehicle.

I don't know if the Defendant had a buddy in the vehicle 30 minutes before the stop that had smoked a joint. It doesn't really matter. If the odor lingered and the officer detected it, it gave him the probable cause under the automobile exception and his training to go ahead and search that vehicle for contraband, which he found. . . .

[The Court]:          All right. Thank you. Anything else, [defense counsel]?

[Defense counsel]:   Well, Your Honor, we believe the video speaks for itself in that it was 12 minutes into this encounter before the Trooper Callaway told Mr. De Los Santos that he smelled marihuana. Up until that point, the trooper was asking him about his marihuana possession in the past, he was asking him if he drank alcohol, he was running a criminal history check on him.

[The Court]:          All of which is good for his conduct, would you agree?

[Defense counsel]:   But the probable cause for the stop was speeding, Your Honor, and he had him out of the truck within one minute after approaching the vehicle.

[The Court]:          Is it your contention that the Trial Court is to second guess the officer in the field and establish Court ordered guidelines how they are supposed to conduct themselves? I am supposed to second guess him?

[Defense counsel]:   No, Your Honor.

5

| | |
|---|---|
| [The Court]: | I am supposed to tell him, "No, you didn't smell marihuana"? |
| [Defense counsel]: | Well, what we need to look at is all the other factors. There was no marihuana found— |
| [The Court]: | And the very fact that he waited some 12 minutes before he started the search leads me to believe that he was doing a very good job, that he was doing what he was supposed to do with his training. If he had pulled him out and started searching immediately, I would have been much more suspicious about this search. |
| [Defense counsel]: | Well, he did pull him out and did a [] frisk on him, I mean, without— |
| [The Court]: | He is allowed to. |
| [Defense counsel]: | Well, without articulating any suspicion for why he wanted him to do that? |
| [The Court]: | That's correct. I am not going to tell this officer how he is supposed to conduct his traffic stops or searches. |

According to De Los Santos, the above comments by the district court demonstrate that it was biased against him and unduly deferential toward the arresting officer.

"Due process requires a neutral and detached hearing body or officer."[7] However, "[a]bsent a clear showing of bias, we presume a trial court is neutral and detached."[8] We cannot conclude that the above comments or anything else in the record demonstrate a "clear showing of bias" against De Los Santos. As the State observes in its brief, "[n]owhere does the trial judge state he is refusing to hear or consider testimony put forth by appellant on the issue at hand,"

---

[7] *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)).

[8] *Tapia v. State*, 462 S.W.3d 29, 35-36 (Tex. Crim. App. 2015) (citing *id.*; *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982)).

i.e., whether the officer smelled the odor of burnt marihuana inside the vehicle. Rather, the district court's comments were merely to the effect that it found unconvincing De Los Santos's proposed inferences that the officer should be deemed not credible based on the sequence and timing of events during the search. The district court, as the finder of fact at the suppression hearing, was entitled to weigh the evidence presented and make credibility determinations and inferences regarding that evidence, including finding credible the officer's testimony that he had smelled marihuana inside the vehicle.[9] Further evidence in support of the district court's finding included Callaway's testimony that he had been a highway patrolman for eight years, that he had received instruction in the detection and identification of different types of drugs, including marihuana, and that he was familiar with the smell of marihuana and had encountered the smell of marihuana "many times." In contrast, De Los Santos presented no evidence controverting Callaway's account of his background, training, or ability to identify the smell of marihuana. On this record, we cannot conclude that the district court abused its discretion in crediting the officer's testimony that he had smelled marihuana inside the vehicle and thus in determining that the officer had probable cause to search the vehicle on that basis.[10]

---

[9] *See Wilson v. State*, 311 S.W.3d 452, 458 (Tex. Crim. App. 2010).

[10] *See Keehn v. State*, 279 S.W.3d 330, 335-36 (Tex. Crim. App. 2009); *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *Luera v. State*, 561 S.W.2d 497, 498 (Tex. Crim. App. 1978); *Dickey v. State*, 96 S.W.3d 610, 613 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Small v. State*, 977 S.W.2d 771, 774-75 (Tex. App.—Fort Worth 1998, no pet.); *see also Robinson v. State*, No. 01-10-00727-CR, 2012 WL 1454451, at *4 (Tex. App.—Houston [1st Dist.] Apr. 26, 2012, pet. ref'd) (mem. op, not designated for publication) ("[T]he discovery of marihuana is not necessary for a trial court to find that an officer had probable cause to search a vehicle based on the odor of marihuana."); *Williams v. State*, No. 14-01-01250-CR, 2002 WL 31426293, at *2 (Tex. App.—Houston [14th Dist.] Oct. 10, 2002, no pet.) (not designated for publication)

We overrule De Los Santos's sole issue on appeal.

**CONCLUSION**

We affirm the judgment of conviction.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed:   July 22, 2016

Do Not Publish

---

("Although no marihuana was found, Deputy Palermo smelled marihuana emanating from the car . . . . Accepting the deputy's facts as true, the odor of burning marihuana provided probable cause to search the car.").